IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ROBERT MICHAEL ARDIS,
    Plaintiff,

vs.                                       Case No.: 3:13cv366/MCR/EMT

LAURA DANHEISSER, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

    Plaintiff, proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint under 42 U.S.C. § 1983, seeking monetary damages and injunctive and declaratory relief (doc. 1 at 1–45). This matter is currently before the court on Plaintiff's Third Amended Complaint (doc. 38).

    The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b). After careful consideration of all issues raised by Plaintiff, it is the opinion of the undersigned that the complaint fails to state a claim on which relief may be granted, and seeks monetary relief against one or more defendants who are immune from such relief. Therefore, dismissal of this action is warranted.

I.     BACKGROUND

    Plaintiff names twelve Defendants in this action: the Office of the State Attorney of the First Judicial Circuit of Florida ("First Circuit"); William Eddins, the State Attorney of the First Circuit; Laura Danheisser, Adrian Emerson, Susan Faris, Gregory Marcille, and Stephen Luongo, all of whom are Assistant State Attorneys; T. Michael Jones, Circuit Judge for the Circuit Court for Escambia County, Florida; Joyce Williams, County Judge for Escambia County, Florida; the Escambia County

Sheriff's Office ("ECSO"); David Morgan, Sheriff of Escambia County; and Harry Kilpatrick, a deputy with the ECSO (doc. 38 at 1–6).

Plaintiff alleges during divorce proceedings between him and his now ex-wife, both he and his ex-wife petitioned for and obtained domestic violence injunctions against each other in Case Nos. 2009-DR-3645 (wherein Plaintiff was the petitioner) and 2009-DR-3588 (wherein Plaintiff's wife was the petitioner) (doc. 38 at 8).[1] Plaintiff alleges on October 25, 2010, he was arrested for violating his ex-wife's injunction (*id.* at 7).[2] He alleges he was "held to one set of standards" regarding compliance with his ex-wife's injunction, but she was "held to a totally separate standard" (*id.* at 8–9). Plaintiff alleges the next day, he appeared at a bond hearing, at which Defendant County Judge Williams "punitively" set bond at $250,000.00 (*id.*).[3] He alleges Judge Williams reduced his bond to $2,500.00 on October 29, 2010, and he posted bond that day (*id.* at 7–8). Plaintiff alleges he lost his job as a result of the incarceration (*id.* at 8).[4]

Plaintiff alleges over two years later, on March 27, 2013, Defendant Circuit Judge Jones issued an order directing Plaintiff to show cause why he should not be held in indirect criminal

---

[1] Plaintiff attached a copy of each injunction to his initial complaint (doc. 1, Exs. A, B).

[2] Plaintiff's initial complaint alleged that beginning in January of 2010, his wife filed three affidavits alleging he violated the injunction in Case No. 2009-DR-3588, but following investigation by law enforcement, all three of her complaints were found to lack probable cause (doc. 1). Plaintiff also alleged in October of 2010, his wife contacted Defendant Deputy Harry Kilpatrick, alleging Plaintiff violated the domestic violence injunction by having contact with her regarding matters not related to their minor child (*id.*). Plaintiff alleged Deputy Kilpatrick investigated the allegations, but did not interview him as part of his investigation as required by the policies and procedures promulgated by the Sheriff's Department (*id.*). Plaintiff alleged Kilpatrick then applied for an arrest warrant, and a warrant issued October 23, 2010 (*id.*). Plaintiff alleged he turned himself in on October 25, 2010 (*id.*).

[3] Plaintiff's initial complaint alleged Judge Williams originally set his bond at $25,000.00, but increased it to $250,000.00, because she interpreted Plaintiff's comments during the bond hearing as indicating he would not abide by the conditions of release (*id.*).

[4] Plaintiff's initial complaint alleged State Attorney Eddins and Assistant State Attorneys Faris, Marcille, and Emerson charged him with violating his ex-wife's domestic violence injunction, and then added additional charges, for a total of fourteen (14), in an effort to "coerce" him to plead guilty (doc. 1). He also alleged he and his counsel contacted Eddins, Faris, Marcille, and Emerson and reported incidents of his ex-wife's violations of the domestic violence injunction issued against her, but Defendants took no action to prosecute the violations (*id.*). Plaintiff alleged the prosecutors agreed to *nolle pros* his criminal charges in early 2011 (*id.*).

contempt for allegedly violating his ex-wife's domestic violence injunction (doc. 38 at 9–10).[5] He alleges he filed several motions to disqualify Judge Jones, but Judge Jones did not rule on them (*id.*).[6] Plaintiff also alleges he filed a motion to dismiss the show cause order, but Judge Jones refused to rule on it (*id.* at 10). Plaintiff alleges Judge Jones appointed counsel for him, and his counsel filed a motion to dismiss the show cause order on statute of limitations grounds (*id.*).[7] He alleges his attorney also filed a motion for statement of particulars and a motion for appointment of a special prosecutor, but Defendants Eddins, Marcille, Luongo, Emerson, Danheisser, and Judge Jones ignored the motions (*id.* at 11). Plaintiff alleges notwithstanding the limitations issue and pending motions, Judge Jones proceeded with the indirect criminal contempt hearing on September 4, 2013 (*id.* at 11–12). He alleges Judge Jones sentenced him to thirty (30) days in jail, and he actually served twelve (12) days (from September 4–16) (*id.* at 12). Plaintiff allege Judge Jones's conduct was "personal," spiteful, and illegal (*id.* at 11–12).

Plaintiff claims that his arrest on October 25, 2010 for allegedly violating the domestic violence injunction, his pre-trial detention and prosecution for those charges, and his prosecution and imprisonment for indirect criminal contempt in 2013, violated his fundamental rights to equal protection and due process (doc. 38 at 8–9, 12). He seeks an injunction enjoining Defendants from "any further harassment" (*id.* at 13–14). He also seeks compensatory and punitive damages for interference with an advantageous business relationship, defamation, invasion of privacy, intentional infliction of emotional distress, pain and suffering, and loss of liberty (*id.*).[8]

---

[5] Plaintiff attached a copy of the show cause order to his initial complaint (doc. 1, Ex. D). In his initial complaint, Plaintiff alleged that also on March 27, 2013, a hearing was held on his ex-wife's motion to dismiss the domestic violence injunction he had obtained against her in Case No. 2009-DR-3645 (doc. 1). Plaintiff alleged Judge Jones dismissed Plaintiff's domestic violence injunction against his ex-wife, despite evidence that she had violated the injunction (*id.*). Plaintiff alleged that prior to the March 27 hearing, he filed a motion to dismiss his ex-wife's injunction as well, but Judge Jones refused to hold a hearing on his motion at that time (*id.*).

[6] Plaintiff's initial complaint alleged Judge Jones denied the motions to disqualify as legally insufficient (doc. 1).

[7] Plaintiff's initial complaint alleged Judge Jones scheduled a hearing on Plaintiff's motion to dismiss for May 1, 2013 (doc. 1). Plaintiff alleged that at the May 1 hearing, Judge Jones appointed counsel to represent him, and the criminal contempt hearing was scheduled for July 10, 2013 (*id.*).

[8] Plaintiff's initial complaint, filed on June 19, 2013, prior to the criminal contempt hearing, requested monetary damages and an injunction enjoining Defendants from proceeding with the criminal contempt proceedings (doc. 1).

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. Davis v. Monroe Cnty. Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). To survive § 1915(e)(2)(B)(ii), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679.  Finally, in civil rights cases, "[m]ore than mere conclusory notice pleading is required . . . . A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."  Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation marks and alteration omitted).

III.    ANALYSIS

    A.    Defendants ECSO, Sheriff David Morgan, and Deputy Harry Kilpatrick

Liberally construing Plaintiff's Third Amended Complaint, he appears to assert claims of false arrest, false imprisonment, and malicious prosecution against Deputy Kilpatrick.  Plaintiff alleges Kilpatrick investigated the allegations that Plaintiff violated his ex-wife's domestic violence injunction, but Kilpatrick failed to interview him (Plaintiff) as part of the investigation.  Plaintiff alleges Kilpatrick then applied for an arrest warrant, a warrant issued October 23, 2010, and Plaintiff turned himself in on October 25, 2010.

Federal law requires an arresting officer to conduct a reasonable investigation in order to determine if probable cause exists to arrest a person.  *See* Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (citation omitted).  However, an officer need not take "every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person."  *Id.* at 1436 (citations omitted).  Where a law enforcement officer has sufficient facts to constitute probable cause, he does not "have a duty to investigate and decide the potential viability of a defense" before seeking an arrest warrant.  *See* Pickens v. Hollowell, 59 F.3d 1203, 1207 (11th Cir. 1995).  Additionally, an officer is generally entitled to give weight to the victim's criminal complaint and identification as support for probable cause.  *See* Rankin, 133 F.3d at 1440; L.S.T., Inc. v. Crow, 49 F.3d 679, 684–85 (11th Cir. 1995) (per curiam).

A police officer submitting affidavits in an application for an arrest warrant may be held liable for damages resulting from the arrest under the authority of the warrant when no reasonable police officer could have believed that the affidavits established probable cause.  *See* Malley v. Briggs, 475 U.S. 335, 344–45, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).  Further, the existence of a warrant will not shield an officer from liability where the warrant was secured based upon an affidavit that contained misstatements made either intentionally or with reckless disregard for the truth.  *See* Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); *see also* W. Point–Pepperell,

Inc. v. Donovan, 689 F.2d 950, 959 (11th Cir. 1982). A corollary of this above-stated rule is that "a warrant affidavit violates the Fourth Amendment when it contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit." Madiwale v. Savaiko, 117 F.3d 1321, 1326–27 (11th Cir. 1997) (emphasis supplied) (internal quotation marks omitted). Omissions that are negligent rather than reckless are of no constitutional magnitude and will not invalidate a warrant. *Id.* at 1327. Lastly, "even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Id.*

Here, Plaintiff's allegation that Deputy Kilpatrick applied for the arrest warrant without interviewing Plaintiff to get his side of the story does not suggest Kilpatrick either intentionally or with reckless disregard for the truth included misstatements or made omissions in his application for the arrest warrant, or that any such misstatements or omissions were "clearly critical to a finding of probable cause." Madiwale, 117 F.3d at 1327; *see also* Dahl v. Holley, 312 F.3d 1228, 1235 (11th Cir. 2002) ("[T]he warrant is valid if, absent the misstatements or omissions, there remains sufficient content to support a finding of probable cause."). Further, Plaintiff does not allege facts suggesting that the totality of the facts and circumstances within Deputy Kilpatrick's knowledge at the moment he applied for the arrest warrant were insufficient for a reasonable person to conclude that Plaintiff had violated the domestic violence injunction. Moreover, the fact that the charges were subsequently dismissed does not suggest an absence of probable cause or otherwise affect the validity of Plaintiff's arrest, detention or prosecution based upon Kirkpatrick's statements in his warrant application. *See* Marx v. Gumbinner, 905 F.2d 1503, 1507 (11th Cir. 1990). Therefore, Plaintiff failed to state a plausible federal claim against Deputy Kilpatrick.

Additionally, Plaintiff's failure to state a plausible claim of false arrest, false imprisonment, or malicious prosecution against Deputy Kilpatrick, defeats his claim for supervisory liability as to Sheriff Morgan and the ECSO. *See* Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013) ("But a supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right."); Rooney v. Watson, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred."). Therefore, Plaintiff's claims against Sheriff Morgan and the ECSO are subject to dismissal as well.

B.  Defendants State Attorney's Office, State Attorney Eddins, and Assistant State Attorneys Faris, Danheisser, Emerson, Luongo, and Marcille

Plaintiff's allegations also fail to state a plausible claim for relief against the State Attorney's Office, State Attorney Eddins, and Assistant State Attorneys Faris, Danheisser, Emerson, Luongo, and Marcille ("the prosecutor Defendants"). A prosecutor is entitled to absolute immunity for all actions he or she takes while performing his or her function as an advocate for the government. Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S. Ct. 2606, 2615–16, 125 L. Ed. 2d 209 (1993). The prosecutorial function includes the initiation and pursuit of criminal prosecution. Imbler v. Pachtman, 424 U.S. 409, 424, 96 S. Ct. 984, 992, 47 L. Ed. 2d 128 (1976); Rivera v. Leal, 359 F.3d 1350, 1353 (11th Cir. 2004); *see also* Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999) (finding that absolute immunity extends to a prosecutor's acts performed "in preparing for the initiation of judicial proceedings for trial, and which occur in the course of his role as an advocate for the State"). Immunity extends to a prosecutor's actions in charging a defendant without probable cause, *see* Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1280 (11th Cir. 2002), and initiating a prosecution even if undertaken with malicious intent, *see* Hart v. Hodges, 587 F.3d 1288, 1295 (11th Cir. 2009).

Under these principles, the conduct of State Attorney Eddins, and Assistant State Attorneys Faris, Danheisser, Emerson, Luongo, and Marcille in initially pursuing the misdemeanor prosecution in 2010 and pursuing the criminal contempt prosecution in 2013, falls within the prosecutorial role, despite Plaintiff's assertion that his ex-wife's allegations that he violated the domestic violence injunction were false. Therefore, the prosecutor Defendants are immune from any claim for monetary damages.

Further, although prosecutors are susceptible to claims for declaratory or injunctive relief despite their immunity from damages for actions intimately associated with the judicial process, *see* Sup. Ct. of Va. v. Consumers Union, 446 U.S. 719, 736–37, 100 S. Ct. 1967, 64 L. Ed. 2d 641 (1980); *see also* Tarter v. Hury, 646 F.2d 1010, 1012 (5th Cir. June 1, 1981) ("[P]rosecutors do not enjoy absolute immunity from [declaratory and injunctive relief] claims."),[9] Plaintiff's allegations are insufficient to state a plausible claim of malicious prosecution. A malicious prosecution claim under

---

[9] *See* Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting in the Eleventh Circuit all former Fifth Circuit decisions rendered before October 1, 1981 as binding precedent).

Case No.: 3:13cv366/MCR/EMT

42 U.S.C. § 1983 exists where (1) an original judicial proceeding against the present Plaintiff was commenced or continued; (2) the present Defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present Plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present Defendant; and (6) Plaintiff suffered damages as a result of the original proceeding. *See* Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004) (citing Burns v. GCC Beverges, Inc., 502 So. 2d 1217 (Fla. 1986)).

Regarding the misdemeanor prosecution in 2010, Plaintiff's allegation that the prosecutor filing a *nolle prosequi* in that case is insufficient to show that the termination of that proceeding constituted a bona fide termination in Plaintiff's favor. The court takes judicial notice of information available on the database maintained by the Escambia County Florida Clerk of Court in Plaintiff's misdemeanor criminal case, Case No. 2010-MM-27316, viewed January 6, 2013, http://www.escambiaclerk.com/.[10] The docket in that case indicates Judge Williams referred Plaintiff to a pretrial intervention program (which included an anger management component), and the prosecutor filed a *nolle prosequi* only after Plaintiff successfully completed the program.[11] *See, e.g.*,

---

[10] *See* Fed. R. Evid. 201; United States v. Berrojo, 628 F.3d 368, 369 (5th Cir. 1980) ("The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it."); *see also* Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (district court permissibly looked to docket sheets in ruling on motion to dismiss because "docket sheets are public records of which the court could take judicial notice"); In re Salem, 465 F.3d 767, 771 (7th Cir. 2006) (taking judicial notice of state court dockets and opinions); Dawson v. Mahoney, 451 F.3d 550, 551 (9th Cir. 2006) (taking judicial notice of state court orders and proceedings); United States v. Mercado, 412 F.3d 243, 247–48 (1st Cir. 2005) (taking judicial notice of state court docket entries).

[11] The Florida Statute establishing pretrial intervention programs provides, in relevant part:

(1) The department [of Corrections] shall supervise pretrial intervention programs for persons charged with a crime, before or after any information has been filed or an indictment has been returned in the circuit court. Such programs shall provide appropriate counseling, education, supervision, and medical and psychological treatment as available and when appropriate for the persons released to such programs.

(2) Any first offender, . . . who is charged with any misdemeanor or felony of the third degree is eligible for release to the pretrial intervention program on the approval of the administrator of the program and the consent of the victim, the state attorney, and the judge who presided at the initial appearance hearing of the offender. However, the defendant may not be released to the pretrial intervention program unless, after consultation with his or her attorney, he or she has voluntarily agreed to such program and has knowingly and intelligently waived his or her right to a speedy trial

Rivas v. Figueroa, No. 11-32196-Civ-SCOLA, 2012 WL 1343949, at *3 (S.D. Fla. Apr. 18, 2012) (unpublished) (a *nolle prosequi* decision that is based upon a criminal defendant's negotiated plea or bargain, such as an agreement to complete a pretrial diversion program or to pay restitution, will not satisfy this element of a malicious prosecution claim); DeMarie v. Jefferson Stores, Inc., 442 So. 2d 1014, 1016 n.1 (Fla. 3d DCA 1983) (filing of *nolle prosequi* after criminal defendant executed a Deferred Prosecution Agreement and Speedy Trial Waiver in return for being accepted as a participant in a pretrial diversion program, with the at least implicit understanding that his case would be *nolle prosequied* upon his successful completion of the program, is not a bona fide termination in plaintiff's favor for purposes of malicious prosecution claim). Further, Plaintiff's allegations fail to show there was an absence of probable cause for the prosecution or that there was malice on the part of the prosecutor Defendants. With regard to the prosecution of the indirect criminal contempt in 2013, Plaintiff's conviction defeats his claim of malicious prosecution. Therefore, Plaintiff failed to

---

for the period of his or her diversion. . . .

(3) The criminal charges against an offender admitted to the program shall be continued without final disposition for a period of 90 days after the date the offender was released to the program, if the offender's participation in the program is satisfactory, and for an additional 90 days upon the request of the program administrator and consent of the state attorney, if the offender's participation in the program is satisfactory.

(4) Resumption of pending criminal proceedings shall be undertaken at any time if the program administrator or state attorney finds that the offender is not fulfilling his or her obligations under this plan or if the public interest so requires. The court may not appoint the public defender to represent an indigent offender released to the pretrial intervention program unless the offender's release is revoked and the offender is subject to imprisonment if convicted.

(5) At the end of the intervention period, the administrator shall recommend:

(a) That the case revert to normal channels for prosecution in instances in which the offender's participation in the program has been unsatisfactory;

(b) That the offender is in need of further supervision; or

(c) That dismissal of charges without prejudice shall be entered in instances in which prosecution is not deemed necessary.

The state attorney shall make the final determination as to whether the prosecution shall continue.

Fla. Stat. § 948.08(1)–(5).

show he is entitled to injunctive relief against the prosecutor Defendants (the State Attorney's Office, State Attorney Eddins, and Assistant State Attorneys Faris, Danheisser, Emerson, Luongo, and Marcille) with regard to his malicious prosecution claims.

Additionally, to the extent Plaintiff raises an equal protection challenge to his arrest and prosecutions for violating the domestic violence injunction and indirect criminal contempt, his allegations fail to state a plausible federal claim. The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated people alike. *See* City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). To state a claim under the Equal Protection Clause, a plaintiff generally must allege "that (1) he is similarly situated with other persons who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race or gender." Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotations omitted). Thus, in order to assert a viable equal protection claim, a plaintiff must first make a threshold showing that he was treated differently from others who were similarly situated to him. *See* Nordlinger v. Hahn, 505 U.S. 1, 112 S. Ct. 2326, 2331, 120 L. Ed. 2d 1 (1992); Hendking v. Smith, 781 F.2d 850 (11th Cir. 1986). The plaintiff must also allege that the defendant acted with the intent to discriminate against him. *See* McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987); E & T Realty v. Strickland, 830 F.2d 1107, 1113 (11th Cir. 1987). Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. GJR Inv., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367–68 (11th Cir. 1998); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987). The Equal Protection Clause is also implicated in "class of one" claims. Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006). A "class of one" equal protection claim does not allege discrimination against a protected class, but rather it alleges that the plaintiff "'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Griffin Indus. v. Irvin, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)). The same strict "similarly situated" standard applies whether an equal protection claim is brought under a "class of one" theory or a traditional theory of unlawful discrimination. *Id.* at 1204–05.

Here, Plaintiff's vague, conclusory allegation that he was "held to one set of standards" regarding compliance with his wife's injunction, but she was "held to a totally separate standard," is insufficient to satisfy the "similarly situated" element of an equal protection claim. Moreover, Plaintiff's factual allegations fail to suggest any Defendant acted with the intent to discriminate against him. Therefore, his allegations fail to state a plausible equal protection claim.

Finally, Plaintiff has no constitutional claim against the prosecutor Defendants based upon their failure to prosecute his ex-wife for her alleged violations of his domestic violence injunction when that injunction was in effect. As a private citizen, Plaintiff "has no judicially cognizable interest" in the criminal prosecution of another. Otero v. United States Attorney Gen., 832 F.2d 141 (11th Cir. 1987) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S. Ct. 1146, 1149, 35 L. Ed. 2d 536 (1973)); *see also* Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (a private citizen has no authority to initiate a criminal prosecution); Sattler v. Johnson, 857 F.2d 224, 226–27 (4th Cir. 1988) (private citizen has no constitutional right to have other citizens, including state actors, criminally prosecuted).

To summarize, the doctrine of prosecutorial immunity bars Plaintiff's claims for monetary damages against the prosecutor Defendants. Further, Plaintiff's allegations fail to state a plausible claim for declaratory or injunctive relief against those Defendants. Therefore, Plaintiff's federal claims against the prosecutor Defendants should be dismissed.

    C.    <u>Defendants Judge Jones and Judge Williams</u>

Plaintiff's lawsuit against Judge Jones and Judge Williams is barred by the doctrine of judicial immunity. *See* Mireles v. Waco, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991) ("Judicial immunity is an immunity from suit, not just from ultimate assessment of damages.") (citing Mitchell v. Forsyth, 472 U.S. 511, 526–27, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985)); Dennis v. Sparks, 449 U.S. 24, 27, 101 S. Ct. 183, 66 L. Ed. 2d 185 (1980); Sibley v. Lando, 437 F.3d 1067, 1071 (11th Cir. 2005). Immunity may be overcome only (1) where the judge has not acted within his judicial capacity or (2) where the judge's actions, though judicial in nature, are taken in the complete absence of all jurisdiction. Stump v. Sparkman, 435 U.S. 349, 356–57, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978); Mireles, 502 U.S. at 11; Forrester v. White, 484 U.S. 219, 227, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988).

Whether an act by a judge is a 'judicial' one relates "to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." Mireles, 502 U.S. at 11 (citing Stump, 435 U.S. at 362); *see also* Simmons v. Conger, 86 F.3d 1080, 1085 (11th Cir. 1996). The relevant inquiry is the "nature" and "function" of the act, not the "act itself." Mireles, 502 U.S. at 13 (citing Stump, 435 U.S. at 362). In other words, the court must look to the particular act's relation to a general function normally performed by a judge.

A judge is not deprived of absolute immunity from liability for damages because an action he took was in error, was illegal, was done maliciously, or was in excess of his or her authority. Stump, 435 U.S. at 355–57; *see also* Mireles, 502 U.S. at 11 (judicial immunity is not overcome by allegations of bad faith or malice). Rather, a judge is subject to liability only when he acted in clear absence of all jurisdiction, and knew or must have known that he was acting in such a manner. Simmons, 86 F.3d at 1084–85 (citing Stump, 435 U.S. at 356–57). An act is done in "clear absence of all jurisdiction," for judicial immunity purposes, if the matter upon which the judge acted is clearly outside the subject matter jurisdiction of the court over which he presides. Dykes, 776 F.2d at 946–47 (citations omitted). The term "jurisdiction," as it applies to judicial immunity, means the "judicial power to hear and determine a matter, not the manner, method, or correctness of the exercise of that power." 48A C.J.S. Judges § 86. Furthermore, for the purposes of immunity, a judge's jurisdiction is construed broadly. Stump, 435 U.S. at 357. Thus, where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes. Harper v. Merckle, 638 F.2d 848 (5th Cir. 1981) (judicial immunity extends to all judicial acts provided they do not fall clearly outside the judge's subject matter jurisdiction). The proper inquiry for determining judicial immunity is not whether the judge actually had jurisdiction, or even whether the judge exceeded his jurisdictional authority, but whether the challenged actions were obviously taken outside the scope of the judge's power. Stump, 435 U.S. at 357 (quotation omitted).

In the instant case, the specific conduct of which Plaintiff complains, and any similar matters concerning the conduct of Plaintiff's civil and criminal cases, are functions normally performed by a judge. Furthermore, as Plaintiff was a party in the cases over which Judge Jones and Judge Williams were presiding, he dealt with them in their judicial capacity. Moreover, although Plaintiff

alleges Judge Williams acted in absence of jurisdiction by imposing a condition of pre-trial release on the misdemeanor charge(s) (prohibiting Plaintiff's contact with his son for seven days until a hearing in the circuit court), which conflicted with a provision of the domestic violence injunctions issued by the circuit judge, Florida law provides county courts with original jurisdiction of all misdemeanor cases. Fla. Stat. § 34.01(1)(a). Therefore, Judge Williams' setting the condition of Plaintiff's bond in the criminal misdemeanor case was not obviously taken outside the scope of her power. *See* Stump, 435 U.S. at 357. Plaintiff has failed to allege any facts plausibly suggesting that Judge Jones or Judge Williams knowingly issued judicial decisions in clear contravention of Florida law. Therefore, they are immune from Plaintiff's claims for damages.

Additionally, § 1983 limits the relief available to Plaintiff to only declaratory relief. *See* 42 U.S.C. § 1983 (". . . in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."). However, in order to receive declaratory relief, Plaintiff must establish "that there was a violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law." Bolin v. Story, 225 F.3d 1234, 1242–43 (11th Cir. 2000) (citing Newman v. Alabama, 683 F.2d 1312 (11th Cir. 1982)). Regardless of whether Plaintiff could establish the existence of a constitutional violation and a risk of continuing irreparable injury—a highly doubtful proposition, based on the allegations of his complaint—he cannot establish the third requirement. Specifically, Plaintiff cannot show the absence of an adequate remedy at law. Plaintiff had the option of appealing Judge Jones' and Judge Williams' rulings to the appropriate state appellate court(s).[12] Because an adequate remedy at law was available to Plaintiff, he is not entitled to declaratory or injunctive relief against Judge Jones or Judge Williams.

### D. State Law Claims

To the extent Plaintiff asserts state law claims, those claims should be dismissed without prejudice to Plaintiff's pursuing them in state court. It is well established that once a plaintiff's federal claims are dismissed, there remains no independent federal jurisdiction to support the court's

---

[12] The Escambia County Florida Clerk of Court's database indicates Plaintiff appealed the order adjudicating him guilty of indirect criminal contempt to the First DCA, Case No. 1D13-4463. The database maintained by the Clerk of Court, Florida First District Court of Appeal, viewed January 6, 2013, http://www.1dca.org/, shows that the appeal is still pending.

Case No.: 3:13cv366/MCR/EMT

exercise of supplemental jurisdiction over state claims against a defendant. *See* <u>Baggett v. First Nat'l Bank of Gainesville</u>, 117 F.3d 1342, 1352 (11th Cir. 1997). Title 28 U.S.C. § 1367(c)(3) provides that the district court may decline to exercise supplemental jurisdiction over claims after it has dismissed all claims over which it has original jurisdiction. *See also* <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725–26, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction. <u>Baggett</u>, 117 F.3d at 1353 (citing <u>Palmer v. Hosp. Auth. of Randolph Cnty.</u>, 22 F.3d 1559, 1569 (11th Cir. 1994); <u>Exec. Software N. Am. v. United States Dist. Court</u>, 15 F.3d 1484, 1493 (9th Cir. 1994); <u>New England Co. v. Bank of Gwinnett Cnty.</u>, 891 F. Supp. 1569, 1578 (N.D. Ga. 1995); <u>Fallin v. Mindis Metals, Inc.</u>, 865 F. Supp. 834, 841 (N.D. Ga. 1994)). Taking these factors into account in this case, the undersigned concludes that any state law claims asserted by Plaintiff should be dismissed to permit him to pursue them in a more appropriate forum. The state court is best equipped to research and rule on matters of state law, and comity would suggest that it should be allowed to do so.

IV. CONCLUSION

The federal claims asserted in the Third Amended Complaint are subject to dismissal with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii). To the extent Plaintiff asserts state law claims, the claims should be dismissed without prejudice to his pursuing them in state court.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Plaintiff's federal claims against all Defendants be **DISMISSED with prejudice**, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), (iii),

2. That any state law claims be **DISMISSED without prejudice**, and

3. That the clerk of court be directed to enter judgment accordingly and close the case.

At Pensacola, Florida this <u>6th</u> day of January 2014.

*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.** A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* **28 U.S.C. § 636;** United States v. Roberts**, 858 F.2d 698, 701 (11th Cir. 1988).**